# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**PROCHNIAK WEISBERG, P.C.**
MATTHEW B. WEISBERG
ATTORNEY ID: 85570
REBECCA M. STEIGER
ATTORNEY ID: 200875
7 SOUTH MORTON AVE.
MORTON, PA 19070
610-690-0801

| | | |
|---|---|---|
| David and Pamela Jackson, Individually & H/W 14 Penn Oak Lane Oxford, PA 19363 | : : : : | |
| Plaintiffs | : | |
| v. | : : | CIVIL ACTION NO.: 09-1549 |
| Accredited Home Lenders, Inc. 15253 Avenue of Science San Diego, CA 92128 | : : : : : | |
| and | : | |
| Real Estate Mortgage Network, Inc. 70 Grand Avenue, Suite 109 River Edge, NJ 07661 | :JURY OF TWELVE (12) JURORS DEMANDED : : : | |
| and | : : | |
| Chase Home Finance, LLC 111 Eighth Ave, 13th Floor New York, NY, 10017 | : : : : | |
| and | : : | |
| John Does 1-10 | : : | |
| Defendants | : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

## I.    Preliminary Statement

1.     Otherwise known as an action in "Predatory Lending," this is an action alleging, *inter alia*, unfair or deceptive acts and practices ("UDAP"), as well as regulatory violations specifically pertaining to lending, federal strict liability statutes pertaining to collections, and common law liability.

2.     "Predatory Lending" is a term describing lending practices in accordance with the following general description (which is paraphrased from a fact sheet available at: http://www.cohhio.org/predatoryfactsheets.html):

> Predatory lenders target specific populations (usually low-income, minority, and/or elderly homeowners) with high pressure marketing techniques, charge excessive fees, frequently refinance or "flip" the loan, and often times mislead the borrower. Predatory lenders are literally harvesting the equity that homeowners have built up over the years. By loading the loan with excessive fees, high interest rates, and pricey insurance premiums on the front end, predatory lenders are all but ensuring themselves a pay-off. In many ways, it's a win-win situation for the lender and a lose-lose situation for the borrower. If the borrower makes the monthly loan payments, which are often times inflated by excessive fees, high interest rates, and pricey insurance premiums, the lender is making a profit. If the borrower is unable to make the monthly payments, the lender forecloses and sells the house for a profit. Predatory lenders go beyond risk-based pricing, and instead set loan terms high above what they need to offset costs and earn a return that compensates for the increased risk. This is typically done through high interest rates, high points, high origination fees, unnecessary credit life insurance, and other unnecessary or unlawful additions to the loan. While many of the loan terms described below may not be predatory on their own, the failure of the lender to fully disclose to the borrower the risk or cost associated with each individual term can make the loan unaware, especially if the borrower is unaware that better terms may be available. By structuring the debt with excessive or concealed fees and interest rates (beyond those needed to cover costs and reasonable, risk-adjusted returns), by

"packing" and financing these excessive fees, and by "flipping" or frequently refinancing with fees being rolled back into the loan, some lenders are able to exploit low-income, minority, and elderly homeowners. Predatory lending practices can and do include both specific types of loan terms as well as overly aggressive marketing and deceptive or fraudulent practices on the part of lenders. These practices raise serious community reinvestment, fair housing and fair lending concerns, largely because banks and their mortgage or finance companies market and target certain communities for higher priced, lower quality products.

3.     This action seeks, *inter alia*:

    a.     Actual and compensatory damages;
        i.     Return of all closing and related costs, including appraisal fee and pre-paid finance charges;
        ii.    Return of all interest charged;
        iii.   Reimbursement of all diminished or lost real estate equity;
        iv.    Payment of all related profits, including yield spread premium and commission;
        vi.    Emotional distress, and pain and suffering;
        vii.   Such other further direct or consequential damages as are known or may become known during discovery or at trial.

    b.     Equitable/injunctive relief;
        i.     Stay of or relief from any pending collection action or activity;
        ii.    Rescission and voiding of any mortgage or like interest;
        iii.   Waiver/forgiveness of any claimed debt/arrearage; and
        iv.    Credit repair.

    c.     Statutory penalties;

    d.     Exemplary relief, including treble and punitive damages; and

    e.     Attorneys fees and costs.

4.     Individually, and jointly and severally, this action requests relief for, *inter alia*, the facts stated or inferred, which are averred upon information and belief or averred as believed will become known in discovery or at trial.

5.     This action may rely on the "Discovery Rule" and the Doctrine(s) of Equitable Tolling/Fraudulent Concealment.

6.      Each and every averment herein is incorporated throughout as if fully set forth at length.

**II.      Jurisdiction and Venue**

7.      Jurisdiction in this Honorable Court is based on federal question and diversity conferred by 28 U.S.C. §1331 and 1332, respectively; supplemental jurisdiction over state law claims is granted by 28 USC §1367.

8.      Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, is incorporated or does business here, or the subject of this action is situated within this district.

**III.      Parties**

9.      Plaintiffs, David and Pamela Jackson ("Plaintiffs" and/or "Mortgagors"), are adult individuals and husband and wife, at all times material residing at the above-captioned address (hereinafter "Premises").

10.     Defendant, Accredited Home Lenders, Inc. ("Originating Lender"), is a corporation under and by virtue of the laws of the State of California, maintaining its principal place of business at the above captioned address, at all times material acting as Plaintiffs' mortgage lender and/or servicer.

11.     Defendant, Real Estate Mortgage Network, Inc. ("Mortgage Brokerage"), is a corporation under and by virtue of the laws of the State of New Jersey, maintaining its principal place of business at the above captioned address, at all times material acting as Plaintiffs' mortgage brokerage.

12.     Defendants, Chase Home Finance, LLC ("Assignee"), is a limited liability company under and by virtue of the laws of the State of Delaware, maintaining its principal place of

business at the above captioned address, at all times material acting as Plaintiffs' mortgage assignee.

13.    Defendants, John Doe 1-10, is a moniker for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.  Each of these parties are incorporated as Defendants in each and every Count and averment listed above and below.

## IV.    Operative Facts

### A.    Introduction

14.    At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

15.    At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter ego's, and/or employees thereof.

16.    Defendants are liable to Plaintiffs, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.

### B.    Functions of and Relationships Between Parties

17.    Between and on behalf of both Originating Lender and Plaintiffs, Mortgage Brokerage acted as an intermediary to secure and source the subject loan.

18.    Through Mortgage Brokerage, Originating Lender underwrote and originated the loan between itself and Plaintiffs.

19.    Assignee purchased loan from Originating Lender with the TILA violations apparent on the face of the papers.

C.      The Loan

20.     At all times material, Plaintiffs were borrowers and/or mortgagors subject and/or party to

a mortgage and note (collectively "Loan[1]") refinance dated July 26, 2006 ("Closing").

21.     Plaintiffs approached Defendant, Mortgage Brokerage, to refinance their mortgage to

lower their interest rate, pay off debts, and obtain a mortgage that would include taxes.

22.     Upon contacting Mortgage Brokerage, Plaintiffs were put in touch with Mortgage

Brokerage's employee, Brett Dexter ("Dexter").

23.     Plaintiffs expressly told Dexter that Plaintiffs wanted a loan without a prepayment

penalty.

24.     Dexter promised Plaintiffs that they would not have a prepayment penalty.

25.     Plaintiffs additionally told Dexter that they were looking for a mortgage that included an

escrow for taxes.

26.     After their original conversation, presumably after searching for the best terms for

Plaintiffs, Dexter advised Plaintiffs that they would not be able to get Plaintiffs a loan with

payments in the range they wanted if taxes were included.

27.     Despite Plaintiffs' above reasons for refinancing, Dexter informed Plaintiffs that the best

mortgage available for Plaintiffs would have an interest rate of approximately 11%, did not

contain a prepayment penalty, would not include taxes, and would not pay off Plaintiffs' debts.

28.     Under Dexter's proposed mortgage, Plaintiffs monthly payments were approximately

$2,000.00 and their taxes were an additional monthly payment of approximately $1,000.00.

---

[1] Upon information and belief, all documents referenced in this averment and throughout Plaintiffs' Complaint are in the possession of all defendants and herein demanded be supplied to Plaintiffs within Defendants' Initial Disclosures pursuant to F.R.C.P. 26(a).

29.     Plaintiffs were hesitant to accept this mortgage as it did not contain the terms they

desired, did not achieve all of their stated goals, and could potentially be unaffordable as the

taxes were not included and did not pay off Plaintiffs' other debts.

30.     Dexter induced Plaintiffs to accept this mortgage by telling Plaintiffs that Mortgage

Brokerage would refinance Plaintiffs thereafter within one (1) year into a mortgage with the

terms Plaintiffs desired.

31.     Dexter told Plaintiffs that he realized that the terms were not great but that the loan did

not contain a prepayment penalty so Plaintiffs would be able to refinance in a year.

32.     At Closing, Plaintiffs specifically looked for, and found, the disclosure that stated that

there would not be a pre-payment penalty. (Exh. A).

33.     Relying on Dexter's promise to refinance in a year and due to the disclosure stating that

there would not be a prepayment penalty, Plaintiffs signed the loan documents at closing,

enabling the mortgage to be recorded as a secured lien against Plaintiffs' home and for Plaintiffs

to be personally liable under the note.

34.     Plaintiffs' timely made their mortgage payments for one (1) year.

35.     Plaintiffs justifiably relied on Dexter's promise that the mortgage would not  contain a

prepayment penalty, as they saw the disclosure that did not have the penalty (Exh. A) and

Plaintiffs were contacted for a refinance.

36.     In or around August 2007, Plaintiffs were contacted by Mortgage Brokerage's employee,

Paul Walker ("Walker") (non-party) for the promised refinance.

37.     Walker represented to Plaintiffs that he found them a refinance that would pay off

Plaintiffs' existing debt, including but not limited to a vehicle loan and doctors bills; have

approximately a 6% fixed interest rate; and include an escrow for taxes.

38.    Plaintiffs were thrilled at this news as Mortgage Brokerage was keeping its promise and Walker's proposed mortgage contained the terms Plaintiff initially requested.

39.    Shortly thereafter Walker informed Plaintiffs that Plaintiffs did not qualify for this refinance as their 2006 mortgage included a five (5) year prepayment penalty (concealed).

40.    Plaintiffs searched through their records and found that the paperwork that Plaintiffs received from the closing did not have a prepayment penalty included in the terms.

41.    In or around August 2007 was the first time Plaintiffs were told about a prepayment penalty; Mortgage Brokerage and Originating Lender actively concealed the existence of the prepayment penalty by failing to include that document in Plaintiffs' loan file.

42.    Upon Walker's assertion that the loan contained a prepayment penalty, Plaintiffs contacted Defendant, Assignee, regarding the loan documents in Assignee's possession.

43.    Assignee sent Plaintiffs a copy of the file it had been given, presumably by Originating Lender.

44.    Upon review of Assignee's file, Plaintiffs discovered that there was conflicting paperwork: Plaintiffs' initial Truth in Lending disclosures, disclosed no prepayment penalty but other paperwork revealed the existence of the prepayment penalty.  (Exh. B).

45.    The initial Truth in Lending disclosure and the final disclosure are both dated July 26, 2006.

46.    Upon information and belief, discovery will show that the Plaintidds laon was signed in a violative manner, as it is believed that the loan was signed prior to the disclosures.

47.    Plaintiffs had not seen the "final" disclosure prior to Assignee providing it to Plaintiffs in or around August 2007.

48.     The different Truth in Lending disclosures dated the same day and with different terms violates TILA's requirement of clear and conspicuous disclosure.  15 U.S.C. § 1632.

49.     The different Truth in Lending disclosures dated the same day and with different terms were made with the intent of confusing Plaintiffs, in violation of the UTPCPL.

50.     Plaintiff's did not know about the prepayment penalty nor the paperwork that included the prepayment penalty until approximately one (1) year after the closing, August 2007, when Walker informed Plaintiffs that the refinance would not proceed.

51.     Due to the prepayment penalty, Plaintiffs cannot refinance their mortgage without incurring an approximate eleven thousand dollar ($11,000.00) penalty, which is cost prohibitive.

52.     Due to the concealed terms, Plaintiffs were unable to refinance, fell behind on their taxes and were unable to pay other, unsecured debt.

53.     Plaintiffs' right of rescission expires three (3) years after the date of the closing. 15 U.S.C. §1635(f).

        D.      Loan Assignment and Servicing

54.     Thereafter the Closing, the loan was sold by Originating Lender to Assignee, who is liable therefore and thereunder by written agreement and as a matter of law.

55.     Assignee was responsible for maintaining and physically holding the Loan, but in actuality did not, which obligation was not performed, negligently, carelessly, and recklessly performed, and otherwise in violation of their fiduciary, contractual, and legal duties.

56.     On their face, the notices provided to Assignee were defective, placing Assignee on notice of Plaintiffs' claims.

57.     The foregoing additionally inured to Plaintiffs' ultimate detriment.

        E.      Injuries

58.     As a result of the foregoing, Plaintiffs have suffered injuries including, but not limited to:

(1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit

rating; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss and/or

possible loss of the premises; (5) attorneys fees and court costs; and/or (6) such other and further

injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing

condition(s).

**V.     Causes of Action**

59.     Paragraphs above are incorporated by reference as if fully set forth at length herein and

below.

60.     Plaintiffs are natural people provided with the right to defer payment of debts or to incur

payment of debt and defer payment, and the credit offered or extended was primarily for

personal, family and/or household purposes.

61.     As a matter of law, Plaintiffs and Defendants are "persons."

62.     Originating Lender and/or Assignee regularly extend consumer credit, six (6) or more

loans per year, two (2) or more high cost mortgages per year, and/or one (1) or more of such high

cost mortgages through a broker, such as Mortgage Brokerage.

63.     This loan was a federally related mortgage loan, made by a federally-insured depository

lender, is HUD-related, and/or was intended to be sold on the secondary market or to creditors

who make or invest more than one million dollars a year in residentially secured loans.

64.     At all times material, Defendants misrepresented and/or omitted material facts to

Plaintiffs, including the aforesaid (incorporated herein by reference) and as more further

described as following but not limited to:  (a) that the loan was beneficial to Plaintiffs', when it

was not; (b) that their fees and costs were usual and customary, when they were not; (c) that their

fees and costs were a part of the finance charge and/or amount financed, when they were not; (d)

that their loans were conventional and fixed, when they were not; (d) that the loan continued

characteristics which it did not; and/or (d) that certain amounts were due and owing, when they

were not.

A. <u>Statutory</u>

**COUNT I**
**Truth-in-Lending Act ("TILA")**
*Originating Lender and Assignee[2]*

65.    At all times material, Defendants, in the ordinary course of business, extended and

arranged for the extension of consumer credit or offered to extend or arrange for the extension of

such credit.

66.    The Loan was a residential mortgage loan subject to Plaintiffs' right of rescission and

recoupment described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

67.    In said loan transaction, Plaintiffs did not receive the disclosures required by the Truth-

In-Lending Act ("TILA"), 15 U.S.C. §1601, et. seq., and Regulation Z of the Federal Reserve

Board ("Regulation Z"), 12 C.F.R §226.1 et seq.

68.    Defendants failed to deliver all "material" disclosures required by TILA and Regulation

Z, including but not limited to:

> (a) Failing to properly and accurately disclose the "amount financed,"
> described in and in violation of Regulation Z §226.18(b) and 15
> U.S.C. §1638(a)(2)(A);

> (b) Failing to clearly and accurately disclose the "finance charge,"
> described in and in violation of Regulation Z §226.4 and 15 U.S.C.
> §1638(a)(3);

> (c) Failing to clearly and accurately disclose the "annual percentage
> rate," described in and in violation of Regular Z §226.18(e) and 15
> U.S.C. §1638(a)(4);

---

[2] See above definitions.

(d) Failing to clearly and conspicuously disclose a prepayment penalty; and/or

(e) Failing to comply with the special disclosure requirements of Regulation Z §226.32.

69.     Originating Lender failed to notify Plaintiffs that there was a 5 year prepayment penalty.

70.     Due to the violations of TILA and Regulation Z, Plaintiffs have an ongoing right to rescind and recoupment.

71.     Plaintiffs either have previously rescinded the loan greater than twenty days prior to the filing of this complaint and Defendants have taken no action to rescind the loan in contravention of their responsibilities under TILA, or, to the extent this Honorable Court may find that Plaintiffs have not already rescinded the loan, Plaintiffs do hereby exercise their right to rescind same and this Complaint shall hereby constitute Plaintiffs' Notice of Rescission pursuant to TILA, 15 U.S.C. §1601, et seq.

72.     Defendant, Assignee, is liable for these violations as arising from facially defective disclosures.

## COUNT II
### Credit Services Act ("CSA")
*Mortgage Brokerage*

73.     Mortgage Brokerage is a Credit Services Organization and Loan Broker as defined under the CSA, 73 P.S. §2182, et seq.

74.     Defendant has violated the CSA for:

(a) Making or using any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage directly or indirectly in any act, practice or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization;

b) Making or using any false or misleading representations or omit any material fact in the offer or sale of the services of a loan broker or engage directly or indirectly in any act that operates or would operate as fraud or deception upon Plaintiffs in connection with the offer or sale of services of a loan broker, notwithstanding the absence of reliance by the Plaintiffs.

## COUNT III
### Unfair Trade Practices And Consumer Protection Law ("UTPCPL")
*All Defendants*

75.    The UTPCPL, 73 P.S. §201-1, et seq., proscribes, *inter alia*, engaging in any "unfair or deceptive acts and practices" either at, prior to, or subsequent to a consumer transaction.

76.    As described, the actions of Defendants constitute unfair or deceptive acts and practices under the UTPCPL, of which Plaintiffs justifiably relied, additionally including, *inter alia*:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that person does not have, §201-2(4)(v);

b. Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made, §201-2(4)(xiv);

c. Defendants misrepresented to Plaintiffs the character, extent, or amount of the debt or its status in a legal proceeding, 73 P.S. §201-3.1; 37 Pa. Code §303.3(3);

d. Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding, 73 P.S. §201-2(xxi);

e. Defendants imposed credit costs expressly prohibited by Federal and Pennsylvania law, and failed to comply with TILA, RESPA, ECOA, FDCPA, CSA, UCC Articles 3 & 9, Rules and Regulations promulgated by the FTC, and the FCEUA, which are per se violations of the UTPCPL;

f. Defendants misrepresented to Plaintiffs that the loan would be beneficial when in fact it was not; and Defendants knew it was not, 79 P.S. §202-1(v); or

g. Defendants misrepresented the characteristics or benefits of the loan.

77.     Plaintiffs justifiably relied on Dexter's assertion that there was not a prepayment penalty in the mortgage.

78.     Plaintiffs checked the loan documents prior to signing and they did not contain a prepayment agreement.

79.     On the face of the documents the loan was intentionally confusing to plaintiffs.

## COUNT IV
## FRAUD/FRAUDULENT MISREPRESENTATION
### *Mortgage Brokerage*

80.     Defendant's fraud and fraudulent misrepresentations included, but were not limited to, intentionally concealing, failing to warn and misrepresenting the loan terms to Plaintiffs, telling Plaintiffs thereby wrongfully inducing Plaintiffs to execute the loan to Plaintiffs' detriment.

81.     At all times material, Plaintiffs justifiably and detrimentally relied upon the material fraud and fraudulent misrepresentations of Defendants, which resulted in the above damages.

**VI.     Prayer for Relief**

**WHEREFORE**, Plaintiffs request this Honorable Court enter judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

a.   Rescission of the loan, including a declaration that Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;

b.   Termination of any security interest in Plaintiffs' property which may have been created under the loan;

   c. Return of any money or property given by Plaintiffs to anyone, including Defendants, in connection with the transaction;

   d. Statutory damages;

   e. Forfeiture and return of loan proceeds;

   f. Damages, including;

      i. Actual damages;

      ii. Treble damages;

      iii. Attorneys fees and expenses, and costs of suit; and

      iv. Punitive Damages.

PROCHNIAK WEISBERG, P.C.

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
REBECCA M. STEIGER, ESQUIRE
Attorneys for Plaintiffs

# EXHIBIT
# A

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (MADE IN COMPLIANCE WITH FEDERAL LAW)

Lender/Broker: **Real Estate Mortgage Network, Inc.**
Loan No.:   06912298
Borrower(s):   **David Jackson**
                   **Pamela Jackson**          Date:   07/26/06
Property Address:   **14 Penn Oak Ln**
                   **Oxford, PA 19363**

[X] Initial Disclosure estimated at time of application          [ ] Final Disclosure based on contract terms

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you assuming the annual percentage rate does not change. | AMOUNT FINANCED The amount of credit provided to you or on your behalf as of loan closing. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
|---|---|---|---|
| E 9.905 % | $ E 483376.29 | $ E 225526.71 | $ E 709903.00 |

## YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | 1971.98 | 08/01/2006 | | | |
| 1 | 1962.18 | 07/01/2036 | | | |

* Includes mortgage insurance premiums, excludes taxes, hazard insurance or flood insurance.

[ ] **DEMAND FEATURE:** This loan transaction has a demand feature.
[ ] **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.
[ ] **VARIABLE RATE FEATURE:** Your loan contains a Variable Rate Feature. Disclosures about the Variable Rate Feature have been provided to you separately.

**SECURITY INTEREST:**   You are giving a security interest in:
                   [ ] the goods or property being purchased.   [X] real property you already own.
**FILING OR RECORDING FEES:** $ 275.00
**LATE CHARGE:**   If a payment is more than   15   days late, you will be charged $   98.60   /   5   % of the principal and interest past due.

**PREPAYMENT:**   If you pay off your loan early, you
                   [ ] may   [X] will not   have to pay a penalty.
                   [ ] may   [X] will not   be entitled to a refund of part of the finance charge.
**INSURANCE:**   Credit life, accident, health or loss of income insurance is not required in connection with this loan. This loan transaction require the following insurance:
                   [X] Hazard Insurance   [ ] Flood Insurance   [ ] Private Mortgage Insurance   [ ] Mutual Mortgage Insurance
                   Borrower(s) may obtain hazard and flood insurance through any person of his/her choice, provided said carrier meets the requirements of the Lender. If Borrower desires Property Insurance to be obtained through the Lender's designated agency, the cost will be set forth in a separate insurance statement furnished by the Lender.
**ASSUMPTION:**   Someone buying your house
                   [ ] may   [ ] may, subject to conditions,   [X] may not assume the remainder of your loan on the original terms.
See your contract documents for additional information regarding nonpayment, default, right to accelerate the maturity of the obligation, prepayment rebates and penalties, and the Lender's policy regarding assumption of the obligation.
                   [X] all dates and numerical disclosures except late payment disclosures are estimates.   E   means an estimate.

*The undersigned hereby acknowledge receiving and reading a completed copy of this disclosure along with copies of the documents provided. The delivery and signing of this disclosure does not constitute an obligation on the part of the lender to make, or the Borrower(s) to accept, the loan as identified.

Read, acknowledged and accepted this   26   day of   2006          . BY: BRETT J DEIXLER
                                                                                        Title

_David Jackson_                                            _Pamela Jackson_
David Jackson                   [Borrower]          Pamela Jackson                   [Borrower]

                                   [Borrower]                                            [Borrower]

REO250 [08/2002]                   Page 1 of 2

# EXHIBIT
# B

# FINAL TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| Borrower Name(s): DAVID JACKSON, PAMELA JACKSON | Lender: Accredited Home Lenders, Inc. A California Corporation 15090 Avenue of Science San Diego, CA 92128 |
|---|---|

| | Date: 07/26/2006 | Loan #: 0607058896 |
|---|---|---|

Loan Type: Conventional

Borrower Address:
14 PENN OAK LANE
OXFORD, PA 19363

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.933 % | $483,989.46 | $ 225,913.82 | $ 709,903.28 |

### PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,971.98 | 09/01/2006 | | | |
| 1 | $1,962.46 | 08/01/2036 | | | |

**DEMAND FEATURE:** [X] This loan does not have a Demand Feature. [ ] This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:** [ ] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at:
14 PENN OAK LANE
OXFORD, PA 19363

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original mortgage terms [ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $0.00

**PROPERTY INSURANCE:** [X] Property hazard insurance in the amount of the lesser of the loan amount or replacement cost with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any company acceptable to the lender. Hazard insurance [ ] is [X] is not available through the lender at an estimated cost of N/A for N/A year term.

**LATE CHARGES:** If your payment is more than 10 days late, you will be charged a late charge of 6.000% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
[X] may [ ] will not have to pay a penalty.
[ ] may [X] will not be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| Borrower DAVID JACKSON | Date | Borrower PAMELA JACKSON | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

MIN # 100176106070588968
THTHNLND.UFF

JACKSON
Page 1 of 1

Loan # 0607058896
Rev 12/04

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID JACKSON, et al.  :  CIVIL ACTION
         :
    v.     :
         :
ACCREDITED HOME LENDERS, :
INC., et al.     :  NO. 09-1549

MEMORANDUM

McLaughlin, J.           August 21, 2009

    This action arises out of the refinancing of a mortgage
loan brokered by Real Estate Mortgage Network, Inc. ("Mortgage
Network"), and underwritten by Accredited Home Lenders, Inc.
("Accredited").  The plaintiffs allege that the defendants
induced them to agree to a loan refinancing by making
misrepresentations regarding the existence of a prepayment
penalty and the availability of an additional refinancing within
one year of the loan agreement.  The defendants are Mortgage
Network, Accredited, and Chase Home Finance, LLC ("Chase"), which
the plaintiffs allege to be the assignee of the refinanced loan.

    The plaintiffs filed their complaint on April 10, 2009,
and an amended complaint on July 14, 2009.  The amended complaint
brings claims for violation of various federal and state
statutes:  (1) the Federal Truth in Lending Act ("TILA") (Count
I), against Mortgage Network and Chase; (2) the Federal Credit
Services Act ("CSA") (Count II), against Mortgage Network; and
(3) the Pennsylvania Unfair Trade Practices and Consumer
Protection Law ("UTPCPL") (Count III), against all defendants.

The complaint also claims fraud and fraudulent misrepresentation (Count IV) against Mortgage Network. Chase has moved to dismiss all claims against it.  The Court will grant Chase's motion. Count I against Chase is hereby dismissed; Count III against Chase is dismissed without prejudice.

I.   <u>Facts as Alleged in the Amended Complaint</u>[1]

In 2006, the plaintiffs approached Mortgage Network to refinance the mortgage loan on their residence located at 14 Penn Oak Lane in Oxford, Pennsylvania.  The plaintiffs sought refinancing in order to lower their interest rate, pay off other debts, and obtain a mortgage that would include taxes.  At Mortgage Network, the plaintiffs dealt with an employee named Brett Dexter ("Dexter").  The plaintiffs informed Dexter that they were seeking a loan that would include a tax escrow and would not have a prepayment penalty.  Dexter told the plaintiffs that while they would be able to acquire a loan without a

---

[1] On a motion to dismiss, courts can consider the allegations of the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004); <u>Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Attached to Chase's motion to dismiss are copies of Truth in Lending disclosure statements signed by the plaintiffs.  <u>See</u> Def.'s Mot. Exs. A, C.  Chase also attached a copy of a "Prepayment Charge Rider" signed by the plaintiffs on July 26, 2006.  <u>Id.</u> Ex. B.  These documents are at issue here; the plaintiffs have not called their authenticity into question. The Court will consider them for the purposes of this motion.

prepayment penalty, they would not be able to acquire one with a
tax escrow provision in their stated payment range.  Dexter told
the plaintiffs that the best mortgage available to them would
have an interest rate of approximately 11% and would not include
taxes or a prepayment penalty.  The loan also would not allow the
plaintiffs to pay off their debts.  The plaintiffs' monthly
payments under this loan would be approximately $2,000, in
addition to a monthly tax payment of approximately $1,000.  Am.
Compl. ¶¶ 20-28.

The plaintiffs told Dexter that they were reluctant to
enter into a loan that did not achieve their initial goals of
debt payment and tax escrow.  Dexter told the plaintiffs that
Mortgage Network would be able to refinance the mortgage under
better terms within one year because the refinanced loan would
not contain a prepayment penalty.  The plaintiffs signed the
refinanced loan agreement and other documents at the closing on
July 26, 2006, after searching for and locating among the
documents a document provided by Mortgage Network stating that
there would not be a prepayment penalty.  Id. ¶¶ 20, 29-33, 35;
see also id. Ex. A.

Following one year of timely mortgage payments, the
plaintiffs were contacted by an employee of Mortgage Network
named Paul Walker ("Walker"), who told the plaintiffs that he had
found a new refinanced loan that would pay off their existing
debt, include a tax escrow, and feature a 6% fixed interest rate.

-3-

Walker later informed the plaintiffs, however, that they did not qualify for such a refinancing because their 2006 mortgage included a five-year prepayment penalty.  To be eligible for the refinancing initially offered by Walker, the plaintiffs would have to incur a penalty of approximately $11,000.  The plaintiffs fell behind on their taxes and were unable to pay other debts as a result of their inability to refinance.  Id. ¶¶ 34-39, 51-52.

After searching their loan documents, the plaintiffs were unable to find any mention of a prepayment penalty.  The plaintiffs contacted Chase, which sent the plaintiffs a copy of the documents in its possession relating to the plaintiffs' loan. Among the documents in the file sent to the plaintiffs by Chase was a Truth in Lending disclosure dated July 26, 2006, which was signed by the plaintiffs, and which stated that the terms of the plaintiffs' loan included existence of a prepayment penalty.  Id. ¶¶ 40-45; see also Def.'s Mot. Ex. B.

The plaintiffs state that they believe that the loan documents were signed prior to any Truth in Lending Disclosures. They also claim that they did not see any disclosure identifying a prepayment penalty until they received the documents from Chase in August 2007.  Id. ¶¶ 46-47.


II.   Analysis

Chase moves to dismiss all claims against it for failure to state a claim; Chase also moves to dismiss the TILA

claim against it for failure to comply with the applicable statute of limitations.  The Court agrees, and will dismiss all claims against Chase.


A.   Federal Pleading Standard

        The current standard for adequately pleading a claim was set out in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Under Twombly, a party's factual allegations must raise a right to relief above the speculative level in order to state a claim.  Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 555).  The Supreme Court recently reaffirmed and clarified the Twombly standard in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The Iqbal Court explained that although a plaintiff is not required to make "detailed factual allegations," Federal Rule 8 demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

        To survive a motion to dismiss, a party may not allege "labels and conclusions." Twombly, 550 U.S. at 555.  A complaint must instead contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." Iqbal, 1927 S. Ct. at 1949.  A claim is facially plausible when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  The plausibility

-5-

standard is not a "probability requirement," but it does require
more than a sheer possibility that a defendant has acted
unlawfully.  Id.

The Supreme Court has explained that two working
principles underlie a motion to dismiss inquiry.  First, the
tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions.
Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice.  Id. at
1950.  Second, only a complaint that states a plausible claim for
relief survives a motion to dismiss.  Id.  Determining whether a
complaint states a plausible claim for relief is "a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  Id.  Where the well-
pleaded facts do not permit a court to infer more than the mere
possibility of misconduct, the complaint has alleged, but has not
"shown," that the pleader is entitled to relief within the
meaning of Rule 8(a)(2).

    B.    Count I - Truth in Lending Act

In Count I of the amended complaint, the plaintiffs
allege that "Defendants" failed to notify them of the five-year
prepayment penalty and failed to deliver the disclosures required
by the TILA.  They assert that the amended complaint seeks
rescission and recoupment of the loan at issue, but not statutory

-6-

damages under the TILA.  Chase argues that the plaintiffs' claim
under the TILA is time-barred and otherwise fails to state a
claim.  The plaintiffs argue that their claim under the TILA
seeks recoupment and rescission, which, they contend, are not
subject to the one-year statute of limitations for TILA claims
for damages.  <u>See</u> Am. Compl. ¶¶ 66, 70; Pls.' Opp. 7.

### 1.   Recoupment

As the United States Court of Appeals for the Third
Circuit has explained, recoupment is a defensive claim that can
only be asserted in response to an independent action instituted
by another party.  Recoupment does not permit the party asserting
it "to present otherwise time-barred claims simply by creative
pleading in an independent proceeding brought by it."  <u>Algrant v.
Evergreen Valley Nurseries Ltd. P'ship</u>, 126 F.3d 178, 184 (3d
Cir. 1997); <u>see also In re Flagstaff Realty Assocs.</u>, 60 F.3d
1031, 1035 (3d Cir. 1995) (stating that recoupment "cannot
be the basis for asserting an independent claim").

As an initial matter, any claim by the plaintiffs for
monetary damages under TILA would be time-barred.  An action for
damages under the TILA must be commenced within one year of the
occurrence of the violation.  15 U.S.C. § 1640(3); <u>Smith v. Fid.
Consumer Disc. Co.</u>, 898 F.2d 896, 903 (3d Cir. 1990).  The TILA
requires that disclosures be made before "credit is extended" to
the consumer, 15 U.S.C. § 1638(b)(1), and a violation occurs when

disclosures are not made prior to the "consummation of the transaction." 12 C.F.R. § 226.17(b).  A transaction is consummated when "the consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226.2(a)(13); <u>Bartholomew v. Northampton Nat'l Bank</u>, 584 F.2d 1288, 1296 (3d Cir. 1978).

Here, the plaintiffs signed the loan at issue on July 26, 2006, and filed their original complaint on April 10, 2009. To the extent that the plaintiffs' claim can be considered one for damages, it is time-barred.  Under the law of this circuit, characterizing the claim as one for recoupment does not alter that conclusion.


2.   <u>Rescission</u>

The amended complaint seeks rescission of the subject loan based on the defendants' alleged TILA violations.  The Court notes that under the TILA, rescission is not available as a remedy for residential mortgage refinancings, provided that the refinanced loan is secured by an interest in the same property. 15 U.S.C. § 1635(e)(2).  It is undisputed that the loan at issue was a refinancing secured against the plaintiffs' residence.  <u>See</u> Am. Compl. ¶ 20.  As a result, rescission is not available in this case.  The plaintiffs' TILA claim is therefore dismissed.

C.   Count III - UTPCPL

The Pennsylvania UTPCPL provides consumers with a remedy against sellers of goods or services when those sellers commit an unfair or deceptive practice.  See 73 Pa. Cons. Stat. Ann. § 201-3.  The statute sets forth a variety of specific conduct constituting "unfair or deceptive acts or practices." See id. § 201-2(4).  In addition to prohibiting certain specific acts, the statute provides a catch-all provision prohibiting persons from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  Id. § 201-2(4)(xxi).

The plaintiffs allege seven violations of the UTPCPL. See Am. Compl. ¶ 76.  Each of these violations, however, is a wholesale copy of a UTPCPL provision or a conclusory allegation against "Defendants" that does not withstand scrutiny under Twombly and Iqbal.  These allegations are not supported by sufficient factual content as to Chase.  The complaint is devoid of any representation made or specific action taken by Chase that would cause any likelihood of confusion.

The plaintiffs also assert that Chase is liable under the UTPCPL catch-all provision, which the defendants argue requires the plaintiffs to plead the elements of common law fraud with specificity.  The plaintiffs suggest that the catch-all provision, by prohibiting "deceptive" conduct in addition to fraud, does not require heightened specificity in pleading.  See

-9-

Hunt v. U.S. Tobacco Co., 538 F.3d 217, 225 (3d Cir. 2008)

(noting that "some authority" suggests that heightened

specificity may not be required when a plaintiff alleges

deception under the UTPCPL).   The Court concludes that, even in

the absence of a heightened particularity requirement, the

amended complaint does not plead sufficient facts to show that

Chase engaged in "deceptive" conduct.   The Court will therefore

grant Chase's motion as to Count III as well.[2]


     An appropriate Order shall issue separately.


_____

     [2] The plaintiffs argue that Chase is liable as the assignee
of the mortgage loan under the "FTC Holder Rule," which provides
that assignee holders of mortgage loans are subject to all of the
claims and defenses the consumer has against the originating
lender.   See 16 C.F.R. § 433.   The amended complaint does not,
however, contain factual content sufficient to subject the
alleged originating lender, Accredited, or Chase, as the alleged
assignee, to liability under the UTPCPL.   On the other hand, the
Court takes no position as to whether it contains sufficient
factual content as to Mortgage Network.
     The plaintiffs also argue that Chase is liable under the
UTPCPL for the conduct that would serve as the basis for
independent violations of the TILA.   Even assuming that the
plaintiffs are correct, the amended complaint fails to plead
facts sufficient to give rise to the reasonable inference of
plausibility required by Twombly and Iqbal.   To the contrary, the
documents of which the Court has taken notice indicate that the
plaintiffs were not only aware of, but also signed, documents
acknowledging a prepayment penalty.   See Def.'s Mot. Ex. B.

# EXHIBIT C

Case 2:09-cv-01549-MAM   Document 45-3   Filed 06/22/10   Page 33 of 35
Case 2:09-cv-01549-MAM   Document 29   Filed 02/12/10   Page 1 of 3
Case 2:09-cv-01549-MAM   Document 29   Filed 02/11/2010   Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID AND PAMELA JACKSON, :
  Plaintiffs, :
    :
     : Civil Action No.: 09-cv-1549-MAM
  v. :
    :
    :
ACCREDITED HOME LENDERS, INC., :
*et al.* :
  Defendants. :

## STIPULATED ORDER

AND NOW, this 11th day of February, 2010, it is hereby STIPULATED and AGREED, by and between the below parties, through their undersigned counsel that:

1. Defendant, Chase Home Finance LLC is dismissed with prejudice and shall be removed from the caption of this case;

2. Plaintiffs are granted leave to amend their Amended Complaint to join and serve U.S. Bank National Association, as trustee for the benefit of the holders of the Asset Backed Funding Corporation Asset Backed Certificates, series 2006-HE1 ("U.S. Bank"), as a Defendant herein, within twenty (20) days, which joinder is without prejudice to any and all defenses of U.S. Bank; and

Case 2:09-cv-01549-MAM   Document 30   Filed 02/11/2010   Page 2 of 2

3.      The hearing upon Plaintiffs' Motion for Partial Reconsideration scheduled for

February 12, 2010 is cancelled.  The Order subject to the Motion for Reconsideration is vacated

per above Defendant's dismissal, but without prejudice to any and all defenses of U.S. Bank.


/s/ Andrew K. Stutzman                    /s/ Matthew B. Weisberg
Andrew K. Stutzman                        Matthew B. Weisberg
Stradley Ronon Stevens & Young, LLP       Weisberg Law, P.C.
2600 One Commerce Square                  7 South Morton Ave.
Philadelphia, PA 19103                    Morton, PA 19070


                                          **SO ORDERED:**

                                          Mary A. McLaughlin, J.

                                          2/12/10


2

```
MODE = MEMORY TRANSMISSION                     START=FEB-12 10:09    END=FEB-12 10:19

     FILE NO.=251

STN NO.   COMM.   ABBR NO.   STATION NAME/TEL NO.    PAGES   DURATION
 001       OK       a          2155648120           003/003 00:01:47
```

*********************************** -        - ***** -              - ********

CHAMBERS OF JUDGE MARY A. MCLAUGHLIN
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Telephone No. (267) 299-7600
Fax No. (267) 299-5071

**FAX COVER SHEET**

**DATE:**        February 12, 2010

**TO:**          Andrew K. Stutzman
                 Fax No.  (215) 564-8120

**FROM:**        The Honorable May A. McLaughlin

**NO. OF PAGES (including cover page):  3**

**MESSAGE:**